**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
ENRIQUE MATOS and         :    Civ. Action No.  06-205(NLH)
LINDA MATOS,
         Plaintiffs,      :

              v.          :    OPINION

CITY OF CAMDEN,           :
DETECTIVE MARSHALL MORGAN,
and OFFICER LUIS SANCHEZ, :

         Defendants.      :
```

**APPEARANCES:**

Thomas Bruno II, Esquire
Abramson & Denenberg, PC
1315 Walnut Street
12th Floor
Philadelphia, PA 19107
     *On behalf of plaintiffs*

Cheryl L. Cooper, Esquire
Holston, MacDonald, Uzdavinis & Ziegler, PC
66 Euclid Street
PO Box 358
Woodbury, NJ 08096
     *On behalf of defendants Detective Marshall Morgan and*
     *Officer Luis Sanchez*

Frank A. Salvati, Esquire
Office of City Attorney
4th Floor - City Hall
Camden, NJ 08101
     *On behalf of defendant City of Camden*

**HILLMAN**, District Judge

       This matter has come before the Court on defendants' motions

for summary judgment on all of plaintiffs' claims arising from

plaintiff Enrique Matos's arrest on January 12, 2004 by

defendants Detective Marshall Morgan and Officer Luis Sanchez of

the Camden City Police Department.  For the reasons expressed

below, Morgan and Sanchez's motion will be granted in part and denied in part, and the City of Camden's motion will be granted.

## BACKGROUND

At approximately 7:00 p.m. on January 12, 2004, plaintiff Enrique Matos was walking from his brother's home to his own when he approached the corner of 6th and York Streets in Camden, New Jersey.  At the time, the Camden City Police Department was conducting a "corner sweep," the purpose of which was to conduct surveillance on areas in Camden known for drug activities. Matos, who was not involved in any drug activity, claims that as he approached the corner, two men dressed in street clothes and "hoodie" sweatshirts ordered Matos to get down on the ground.[1] Because neither of the men wore anything to identify themselves as police officers, although he did notice that they carried guns, Matos states that he replied, "I'll do whatever you say. Just show me your badge."  Matos states that he had been robbed by armed men two weeks earlier, and he thought he was being robbed again.

Matos claims that before being able to comply with the command, someone started choking him from behind and he was tackled to the ground.  Matos claims that a knit cap was then placed over his eyes, he was placed in a police van, and transported to the 7th Street sub-station, where he was allowed

---

[1]These two officers were not defendants Sanchez or Morgan.

2

to leave.  He was not issued any summonses at the time, but later received in the mail a summons for "Improper Behavior" and resisting arrest.  As a result of this incident, Matos filed an Internal Affairs Complaint.  He also claims he suffered serious and permanent injury to his right knee.[2]

The Internal Affairs investigation and discovery in this case provide a fuller, although a mostly disputed, picture of what occurred on January 12.  It is undisputed that Matos was not the target of the police investigation.  Matos, however, came upon the scene just as the officers were commanding the two suspects to get onto the ground.[3]  While the two suspects complied with the order and were handcuffed, an officer at the scene, Officer Sampson, and defendant Officer Sanchez, claim that Matos was belligerent to the officers.  These officers claim that Matos was ordered to leave the area two times, but continued with his behavior.  Sanchez contends that when he asked for Matos's identification, Matos replied, "F--- You."  Sanchez then announced that Matos was under arrest, but Sanchez claims that Matos pulled away.  Sanchez states that he repeated to Matos that he was under arrest, and informed him not to pull away.  At that

---

[2]Matos suffered a lateral meniscal tear requiring several arthroscopic surgeries.

[3]Matos claims that he did not know the two suspects, other than to perhaps recognize their faces.  Defendant Sanchez states that Matos was walking and talking with the suspects.

3

point, Sanchez claims that Matos attempted to flee the scene, but he tripped.  While Matos was falling, Sanchez claims that he, at 5'10", 175 pounds, jumped on the back of the much larger Matos, 6'3", 300 pounds, and they both fell to the ground.  Sanchez claims that Matos continued to struggle and resisted efforts to restrain his hands, and Sanchez remained on top of Matos until he could gain control of Matos.  Sanchez also relates that defendant Detective Marshall Morgan assisted in lifting Matos from the ground and placing him in the police van.  Morgan corroborates Sanchez's account that Matos was asked to leave the area several times and that he saw Matos pull away from the other officer. Morgan states that he did not touch Matos, and does not recall how Matos was taken to the ground, or that he assisted lifting him to his feet.

Matos's version of events differs greatly from the accounts of Morgan and Sanchez.  He disputes that he was told to leave the area.  He claims that if they had told him to leave, "they wouldn't have had to say it twice; I would have left."  Matos also disputes that he cursed at the police officers or acted belligerently.[4]  Further, Matos disputes that he resisted the police.  He claims that he did not run away, and he claims that he initially did not allow his hands to be restrained because he

---

[4]Two other officers at the scene, Miguel Ruiz and Luis Ruiz, testified that they did not observe Matos acting as described by defendants.

was attempting to get the hands off his throat so he could breathe.[5]  Matos essentially claims that he was at the wrong place at the wrong time, and without being provided the opportunity to leave, thrown to the ground, choked, and arrested for no reason.

Based on these events, Matos filed a seven-count complaint against Sanchez and Morgan and the City of Camden.  His claims against Sanchez and Morgan include ones for "illegal seizure," false arrest, and excessive force in violation of the federal and New Jersey state constitutions; conspiracy; bystander liability; and assault and battery and false arrest under state law.  His claims against the City of Camden include failure to train, deliberate indifference, and unconstitutional policies.  Linda Matos has also asserted a claim against Sanchez and Morgan for loss of consortium.

Sanchez, Morgan, and the City of Camden have moved for summary judgment on all of plaintiffs' claims.  Matos has opposed Sanchez and Morgan's motion, except for their motion on Linda Matos's loss of consortium claim.  Matos has not opposed the City of Camden's motion.

_____

[5]In contrast to Sanchez's testimony that he tackled Matos, Matos claims that Sanchez was to the right of him when "someone"--not Sanchez--choked him from behind.  Matos asserts later in his deposition that it was Morgan who choked him from behind.

**DISCUSSION**

### A.   Jurisdiction

Plaintiffs have brought their claims pursuant to 42 U.S.C. §
1983, as well as the New Jersey constitution and New Jersey state
law.  This Court has jurisdiction over plaintiffs' federal claims
under 28 U.S.C. § 1331, and supplemental jurisdiction over
plaintiffs' state law claims under 28 U.S.C. § 1367.

### B.   Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied
that "the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ.
P. 56(c).

An issue is "genuine" if it is supported by evidence such
that a reasonable jury could return a verdict in the nonmoving
party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).  A fact is "material" if, under the governing
substantive law, a dispute about the fact might affect the
outcome of the suit.  Id.  In considering a motion for summary
judgment, a district court may not make credibility
determinations or engage in any weighing of the evidence;
instead, the non-moving party's evidence "is to be believed and

6

all justifiable inferences are to be drawn in his favor." <u>Marino v. Industrial Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004)(quoting <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. <u>Id.</u> Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. <u>Anderson</u>, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

**C. Analysis**

**1. Matos's claims against Sanchez and Morgan**

Matos's claims can be separated into two categories: (a) constitutional claims and (b) state law tort claims. Each category will be addressed in turn.

> **a.  *Matos's claims of excessive force and false arrest in violation of the federal and New Jersey state constitutions***

Matos claims that Sanchez and Morgan used excessive force in effecting his arrest, as well as falsely arrested him in

7

violation of the Fourth Amendment and the New Jersey
Constitution.[6]  The qualified immunity analysis provides the
basis to determine whether a claim for a constitutional violation
by a law enforcement officer is viable.[7]  The doctrine of
qualified immunity protects government officials "from liability
for civil damages insofar as their conduct does not violate
clearly established statutory or constitutional rights of which a
reasonable person would have known."  Harlow v. Fitzgerald, 457
U.S. 800, 818 (1982).  "Qualified immunity balances two important
interests--the need to hold public officials accountable when
they exercise power irresponsibly and the need to shield
officials from harassment, distraction, and liability when they

---

[6]Matos also claims that he was "illegally seized." This
claim is subsumed in his excessive force claim (to the extent
that Matos is claiming that defendants' physical contact with him
was unreasonable) or his false arrest claim (to the extent that
Matos is claiming that his seizure was not based on probable
cause).

[7]Because the analysis of claims under state constitutional
law is similar to the analysis under the Fourth Amendment, no
separate analysis will be undertaken for Lamb's claims arising
under the New Jersey Constitution.  See Hedges v. Musco, 204 F.3d
109, 121 (3d Cir. 2000) (granting defendants' motion for summary
judgment on plaintiffs' claims under Article I, paragraph 7 of
the New Jersey Constitution, because it was already established
that there was no federal constitutional violation) (citing
Desilets v. Clearview Regional Bd. of Educ., 627 A.2d 667, 673
(N.J. Super. Ct. App. Div. 1993) ("We are not persuaded that the
New Jersey Constitution provides greater protection under the
circumstances of this case than its federal counterpart. We note
that in its T.L.O. opinion the New Jersey Supreme Court analyzed
the search and seizure issue under the Fourth Amendment to the
United States Constitution, and did not suggest that New Jersey's
organic law imposed more stringent standards.")).

perform their duties reasonably." <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815 (2009).  The doctrine provides a government official immunity from suit rather than a mere defense from liability, and, thus, the issue of whether qualified immunity applies should be decided at the earliest possible stage in litigation.  <u>Id.</u>

In order to determine whether a government official is entitled to qualified immunity, two questions are to be asked: (1) has the plaintiff alleged or shown a violation of a constitutional right, and (2) is the right at issue "clearly established" at the time of the defendant's alleged misconduct? <u>Id.</u> at 816.  These questions may be answered in order, but courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  <u>Id.</u> at 818 (receding from <u>Saucier v. Katz</u>, 533 U.S. 194 (1998), which required the two questions to be answered sequentially).  If the answer to either question is "no," the analysis may end there.  <u>See</u> <u>id.</u> at 823 (finding that because the unlawfulness of the officers' conduct was not clearly established, the officers were entitled to qualified immunity, without having to answer the question of whether the officers violated the plaintiff's constitutional rights).

Here, the parties do not dispute that Matos's right to be free from excessive force and false arrest is clearly

established.  Thus, in order to determine whether Matos's claims
against Sanchez and Morgan are viable, it must be determined
whether defendants violated Matos's constitutional rights.

A warrantless arrest by a law officer is reasonable under
the Fourth Amendment where there is probable cause to believe
that a criminal offense has been or is being committed.
Devenpeck v. Alford, 543 U.S. 146, 152-53 (2004).  Whether
probable cause exists depends upon the reasonable conclusion to
be drawn from the facts known to the arresting officer at the
time of the arrest.  Id.; see also Wright v. City of
Philadelphia, 409 F.3d 595, 601 (3d Cir. 2005) (stating that in
order to determine whether an arrest is valid, the Court must
look to the law of the state where the arrest took place).
"Probable cause to arrest requires more than mere suspicion;
however, it does not require that the officer have evidence
sufficient to prove guilt beyond a reasonable doubt.  Rather,
probable cause to arrest exists when the facts and circumstances
within the arresting officer's knowledge are sufficient in
themselves to warrant a reasonable person to believe that an
offense has been or is being committed by the person to be
arrested."  Orsatti v. New Jersey State Police, 71 F.3d 480, 482-
83 (3d Cir. 1995) (citations omitted).  For a § 1983 claim based
on false arrest, the inquiry is "not whether the person arrested
in fact committed the offense but whether the arresting officers

10

had probable cause to believe the person arrested had committed the offense." Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).

In determining whether excessive force was used during an arrest, the Fourth Amendment's "objective reasonableness" test is applied. Sharrar v. Felsing, 128 F.3d 810, 820-21 (3d Cir. 1997) (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). The objective reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (relying on Graham, 490 U.S. at 396; Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995)). In evaluating the proper test for objective reasonableness, the Supreme Court has provided that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, . . . violates the Fourth Amendment." Graham v. Connor, 490 U.S. 386, 396 (1989)(citation omitted). Rather, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Id.

11

Defendants argue that based on their version of events, under the backdrop of a high crime street corner at night during a volatile "corner sweep" and drug bust, defendants' actions were reasonable.  According to them, while the police were apprehending the two other men walking down the street, Matos became irate and interfered with the apprehension of the two suspects.  Defendants claim that because of Matos's behavior-- yelling, cursing, not leaving the scene as asked--they had probable cause to put him under arrest for disorderly conduct. Defendants further claim that because Matos resisted arrest and then started to flee, it was reasonable for Sanchez to jump on Matos's back and bring him to the ground in order to subdue him. Defendants then claim that based on this conduct, it was also proper to arrest Matos for resisting arrest.

If the evidence on the record wholly supported defendants' account of what occurred, then a finding of qualified immunity may be appropriate.  Matos, however, has provided sufficient conflicting evidence to defeat summary judgment on the qualified immunity issue.

First, it is disputed whether Matos's presence interfered with the arrest of the two suspects.  Sanchez testified that the two suspects immediately complied with other officers' orders to get down on the ground.  Morgan testified that when he arrived on the scene, the two suspects were already being arrested while

12

Matos was on the sidewalk talking to other officers.  Officer
Miguel Ruiz testified that the two suspects were already arrested
and in the police van while other officers surrounded Matos.
Thus, evidence in the record, if believed, could discount
defendants' claim that Matos was arrested for interfering with
police activity, because at the time Matos was taken to the
ground and arrested, the suspects had already been apprehended
and secured.[8]

Second, it is disputed whether Matos was shouting or
hollering at the officers.  In addition to Matos's testimony that
he did not act belligerently, Officer Miguel Ruiz testified that
he never observed Matos being loud or using profanity.  Officer
Luis Ruiz testified that he did not observe anything between
Matos, Sanchez and Morgan that would have caused them to arrest
him, and he still does not know why Matos was arrested.[9]  Again,
evidence in the record, if believed, could discount defendants'
claim that Matos was arrested for interfering with police
activity or being disorderly.

---

[8]The Internal Affairs investigation reveals disparity in the
testimony of Morgan and Officer Miguel Ruiz with regard to
whether Matos was interfering with the drug bust.  This
difference in testimony also demonstrates why summary judgment is
not appropriate.

[9]Officer Luis Ruiz also testified that he initially thought
the reason why Matos was being arrested was because he was part
of the drug bust.

13

Third, it is disputed whether Matos had the opportunity to leave the scene as defendants claim they instructed.  Matos claims that he would have left immediately if had been told to.  Further, even if Matos was told to leave and refused, it is questionable whether it is reasonable to take a person to the ground because he refuses to leave.[10]

Fourth, the nature of the physical altercation is in dispute.  Matos claims he never tried to flee and was choked from behind and forced to the ground.  He claims that as he was falling to the ground, someone put his knee into the back of Matos's knee and put all his weight onto it.  Sanchez admits to jumping on the back of Matos, but both he and Morgan deny that either of them choked Matos.[11]  Additionally, the parties dispute

---

[10]Defendants argue that Matos was taken to the ground and arrested because he refused to leave, but also that he was arrested because he attempted to flee.  This contradiction must be resolved by a jury.  Further, a police officer may not detain or arrest someone simply for being obnoxious or uncooperative, without more.  See City of Houston v. Hill, 482 U.S. 451 (1987) (invalidating on First Amendment grounds city ordinance which made it a crime to verbally criticize or challenge police officers); Vasquez v. Salisbury Tp. Police Dept., 1999 WL 636662, *10 (E.D. Pa. 1999).

[11]Defendant Sanchez argues that because Matos testified that Sanchez was standing next to him, and not the one choking him, he committed no physical force on Matos, and therefore, cannot be held to have committed excessive force.  He also argues that he cannot be held to have committed excessive force because Matos described the man who choked him as a "pretty big size" and a "lighter black guy," and Sanchez is Hispanic and much smaller than Matos.  There are two problems with this logic.  First, Sanchez admits to tackling Matos.  Thus, even if Matos was

that following the physical altercation, whether a knit cap was placed over Matos's eyes so that he could not identify the officers.

Thus, based on the above-described disputed evidence, the Court cannot determine as a matter of law that defendants had probable cause to arrest Matos.  Matos was arrested for the Camden City Ordinance for "Improper Behavior," and for resisting arrest for that violation.[12]  The Ordinance provides,

> Chapter 395: PEACE AND GOOD ORDER
> § 395-8. Disturbances near quiet facilities.
> No person shall, by noisy or disorderly conduct, disturb or interfere with the quiet or good order of any place of assembly, public or private, including, but not limited to, any school, house of worship, library or reading room.[13]

Even though the constitutional validity of the arrest does

---

confused about which officers physically handled him, the Court or a jury cannot close its eyes to that fact that Sanchez did indeed use force on Matos.  Second, this is a disputed issue of fact, which must be considered by a jury, and it is up to the jury as to whose version of events to believe, and the credibility attached to each party's account.

[12]Defendants represent in their brief that Matos was arrested for a disorderly persons offence.  A disorderly persons offence is a separate and independent violation, for which Matos was not charged.  See N.J.S.A. 2C:33-2.

[13]The Court questions whether, regardless of the factual dispute, the ordinance is applicable to Matos, even if defendants' version of events is believed.  The title of the ordinance--"Disturbances near quiet facilities"--does not appear to encompass high crime street corners.

not depend on whether the Matos actually committed any crime,
Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005),
in order to have probable cause to arrest Matos, defendants had
to have reasonably believed that he was committing some crime,
id. (citing Beck v. Ohio, 379 U.S. 89, 91 (1964) ("An arrest was
made with probable cause if 'at the moment the arrest was made
... the facts and circumstances within [the officers'] knowledge
and of which they had reasonably trustworthy information were
sufficient to warrant a prudent man in believing that [the
suspect] had committed or was committing an offense.'").  Thus,
it must be determined whether it was reasonable for defendants to
think that Matos was, essentially, disturbing the peace.[14]
Drawing all inferences in favor of Matos as the non-moving party-
-that he was innocently walking by a street corner at the exact
time a drug bust was occurring, he was choked and tackled by
defendants for no reason, and he did not resist the officers--he
has presented sufficient evidence that a reasonable jury could

---

[14]Matos was not issued a summons on the scene or when he was
brought to the station.  Rather, he was later issued summonses
through the mail.  The Court also notes that Matos was not
charged with obstruction.  The violation of "Obstructing
Administration of Law or Other Government Function," provides, "A
person commits an offense if he purposely obstructs, impairs or
perverts the administration of law or other governmental function
or prevents or attempts to prevent a public servant from lawfully
performing an official function by means of flight, intimidation,
force, violence, or physical interference or obstacle, or by
means of any independently unlawful act."  N.J.S.A. 2C:29-1.

16

determine that probable cause was lacking for his arrest.[15]  See Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998) (stating that ordinarily, "the question of probable cause in a section 1983 damage suit is an issue for the jury").

Correspondingly, the Court cannot determine as a matter of law that defendants were reasonable in their use of force in effecting Matos's arrest.  Matos has provided evidence to support his contention that he was not interfering with the arrest of the two drug suspects by acting belligerently and by refusing to leave the scene.  He has also presented evidence that he never attempted to flee once the officers told him that he was under arrest.  Further, Morgan and Sanchez both testified that they did not fear for their safety during their interaction with Matos.  If Matos's evidence and testimony is to believed, a reasonable jury could find that the force used to effect Matos's arrest was excessive.  See, e.g., Hung v. Watford, 2002 WL 31689328, *6 (E.D. Pa. 2002) (finding that "an unprovoked grab, punch, kick and handcuffing of an individual who is not resisting arrest or even being arrested, not fleeing the scene of a crime and not engaging in any threatening activity to an officer or others, was

---

[15]In order for the police to have properly charged Matos with resisting arrest, they must have had probable cause on the disturbing the peace charges. "This is because the resisting arrest charge could not have provided probable cause for the arrest ab initio." Groman v. Township of Manalapan, 47 F.3d 628, 635 (3d Cir. 1995).

17

clearly established as a violation of a constitutional right at the time of the incident"); Nelson v. Mattern, 844 F. Supp. 216, 222 (E.D. Pa. 1994) (finding that forcefully tackling a fleeing suspect who was unarmed constituted excessive force). Further, as to which version of events to believe is a credibility determination, which must be made by a jury. Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004).

In sum, disputed issues of material fact exist as to the nature of the force used on Matos and the circumstances leading up to the use of that force and his ultimate arrest. Because disputed issues of material fact remain as to Matos's false arrest and excessive force claims, and because those claims, if proven, could rise to the level of a constitutional violation for which Morgan and Sanchez would not be entitled to qualified immunity, defendants' motion for summary judgment must be denied.[16]

---

[16] As the Court noted earlier, the parties do not dispute Matos's right to be free from excessive force in effecting his arrest, as well as his right to have his arrest based on probable cause. Since these rights are clearly established, it appears that the second step of the analysis would be resolved against a finding of qualified immunity. However, at trial, the Court, rather than the jury, must still make a determination as a matter of law as to step two. Consequently, the Court will use special jury interrogatories to permit the jury to resolve the disputed facts upon which the court can then determine, as a matter of law, the ultimate question of qualified immunity. See Curley v. Klem, 499 F.3d 199, 211, 211 n.12 (3d Cir. 2007).

18

b.   ***Matos's claim for bystander liability***

Matos claims that defendants Sanchez and Morgan should have known that they did not have probable cause to arrest Matos, and that their use of force was excessive, and, therefore, Sanchez and/or Morgan had an obligation to stop the other from committing such conduct.  Defendants argue that they are entitled to summary judgment on this claim for two reasons.  First, if it is found that defendants are entitled to qualified immunity, this claim must fail.  Second, defendants argue that even if qualified immunity cannot be determined, this claim must fail because, even taking all of Matos's statements as true, Morgan was the actor and, thus, could not intervene, and Sanchez did not have the opportunity to intervene.  In response, Matos argues that even though Morgan could not have stopped Sanchez from taking-down Matos, Sanchez had the opportunity to stop Morgan from choking him, which occurred before the take-down.  Further, Matos argues that if it is found that there was no probable cause to arrest him, Morgan had the opportunity to intervene to stop the unconstitutional arrest of Matos.

Courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior.  "'If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation

such as an unprovoked beating takes place in his presence, the
officer is directly liable under Section 1983.'" <u>Smith v.
Mensinger</u>, 293 F.3d 641, 650-51 (3d Cir. 2002) (quoting <u>Byrd v.
Clark</u>, 783 F.2d 1002, 1007 (11th Cir. 1986)) (other citations
omitted).  In order to establish a claim for bystander liability
for the actions of a fellow officer, the plaintiff must establish
that the officer "observe[ed] or had reason to know: (1) that
excessive force [was] being used; (2) that a citizen was being
unjustifiably arrested; or (3) that any constitutional violation
[was being] committed by a law enforcement official." <u>Herrera v.
City of New Brunswick</u>, 2008 WL 305275, *10 (D.N.J. Feb. 1, 2008)
(citing <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994).  An
officer is only liable, however, if there is a realistic and
reasonable opportunity to intervene. <u>Smith</u>, 293 F.3d at 651.

Here, the encounter between Matos and defendants is
disputed, and the issue of whether Morgan or Sanchez acted with
excessive force and/or probable cause is a question of fact which
requires jury determination.  Thus, bystander liability cannot be
determined if the issue of excessive force and probable cause
cannot be determined.  Further, if the situation is viewed in the
light most favorable to Matos, there is sufficient evidence from
which a reasonable jury could conclude that both officers were
aware of the other's actions.  "Whether [an officer] had
sufficient time to intercede or was capable of preventing the

harm being caused by another officer is an issue of fact for the jury, unless considering all the evidence, a reasonable jury could not possibly conclude otherwise."  <u>Herrera</u>, 2008 WL 305275 at *10 (citing <u>Anderson</u>, 17 F.3d at 557).  Because it is not clear whether defendants would have been capable to intervene, summary judgment must be denied on the bystander liability claim.

## 2.  **Matos's claims of false arrest and assault and battery under New Jersey state law**[17]

Matos has also asserted claims under New Jersey state law against Morgan and Sanchez for false arrest and assault and battery.  Morgan and Sanchez have moved for summary judgment on Matos's state law claims because they claim (1) that they are immune under the New Jersey Tort Claims Act (NJTCA), and (2) that Matos's injuries are not permanent, and therefore not viable under the NJTCA.[18]

Summary judgment must be denied as to both arguments.

--------

[17]Linda Matos has asserted a claim of loss of consortium against defendants.  Defendants have moved for summary judgment in their favor on this claim.  Plaintiffs do not contest the entry of summary judgment in defendants' favor on this claim. Thus, the Court will so order.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322  (1986) (stating that summary judgment is appropriately granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial).

[18]Defendants do not dispute that Matos has complied with the notice provision of the NJTCA.  <u>See</u> N.J.S.A. 59:8-3, -8.

First, a public employee is not immune under the NJTCA for false arrest.  See N.J.S.A. 59:3-3 ("A public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.").  Second, with regard to both false arrest and assault, because the same "objective reasonableness" standard that is used to determine whether a defendant enjoys qualified immunity from actions brought pursuant to 42 U.S.C. § 1983 is used to determine questions of good faith arising under N.J.S.A. § 59:3-3, the same uncertainty that prevents the Court from determining as a matter of law whether defendants enjoy qualified immunity with regard to Matos's § 1983 claim also prevents the Court from determining as a matter of law whether the NJTCA shields them from liability for allegedly assaulting Matos.  Mantz v. Chain, 239 F. Supp. 2d 486, 507-08 (D.N.J. 2002) (citing Lear v. Township of Piscataway, 566 A.2d 557 (N.J. Super. Ct. App. Div. 1989)).

    Furthermore, N.J.S.A. 59:3-14(a) strips a public employee of any immunity if that employee is found to have engaged in "willful misconduct."  Willful misconduct is "the commission of a forbidden act with actual (not imputed) knowledge that the act is forbidden . . . . [I]t requires much more than an absence of good faith and much more than negligence."  Id. (quoting PBA Local No. 38 v. Woodbridge Police Dep't, 832 F. Supp. 808, 830

(D.N.J. 1993) (internal quotations omitted)).  Because there
exists a genuine issue of material fact regarding whether
defendants engaged in willful misconduct, the Court cannot
determine as a matter of law whether the NJTCA shields them from
liability for their use of force against Matos.

With regard to defendants' argument regarding the permanency
of Matos's injuries and his ability to pierce the verbal
threshold, the NJTCA provides,

> No damages shall be awarded against a public entity or
> public employee for pain and suffering resulting from
> any injury; provided, however, that this limitation on
> the recovery of damages for pain and suffering shall
> not apply in cases of permanent loss of a bodily
> function, permanent disfigurement or dismemberment
> where the medical treatment expenses are in excess of
> $3,600.00.

See N.J.S.A. 59:9-2.

It has been held that the verbal threshold does not apply to
claims for assault and battery.  See Kelly v. County of Monmouth,
883 A.2d 411, 417 (N.J. Super. Ct. App. Div. 2005) (holding that
if a plaintiff can show that the public employee willfully
committed an assault or battery upon the plaintiff, or to the
extent it can be shown that his tortious conduct exceeded the
scope of his employment, the application of the verbal threshold
is precluded).  Thus, Matos's assault and battery claim is not
barred under the NJTCA.

In contrast, it has been held that the verbal threshold

23

applies to common law false arrest claims.  DelaCruz v. Borough of Hillsdale, 870 A.2d 259, 261 (N.J. 2005) (holding that NJTCA's "verbal threshold applies to common law false arrest/false imprisonment claims").  "[I]n order to vault the pain and suffering threshold under the Tort Claims Act, a plaintiff must satisfy a two-pronged standard by proving (1) an objective permanent injury, and (2) a permanent loss of a bodily function that is substantial."  Gilhooley v. County of Union, 753 A.2d 1137, 1142 (N.J. 2000) (citing Brooks v. Odom, 696 A.2d 619 (N.J. 1997)).  Defendants argue that Matos has not pierced the verbal threshold because his knee injury does not meet this standard, and because no expert has stated that Matos's knee injury is a permanent loss rendering it substantially useless.

It is defendants' burden on summary judgment to show the absence of material fact.  Simply stating that Matos's knee injury does not meet the criteria for piercing the verbal threshold is insufficient.  Moreover, Matos has provided a medical opinion from his expert who states that the "injury is significant and will have permanent residuals."  (Pl. Ex. H.) Defendants do not provide any evidence to counter this finding.

Consequently, because issues of material fact remain with regard to defendants' immunity and the nature of Matos's injuries, summary judgment must be denied as to Matos's state law claims.

24

### 3.    Plaintiffs' claims against the City of Camden

Matos claims that the City of Camden has a custom of failing to adequately train, supervise or discipline its police officers in the use of force.  Matos also claims that the City of Camden also has a corresponding custom of failing to adequately investigate complaints of excessive force against its police officers.  The City of Camden has denied these allegations, and argues that it is entitled to summary judgment because Matos has failed to take any discovery as to these claims, and, therefore, can provide no proof to support these claims.[19]

Matos states that he does not contest the entry of summary judgment in the City's favor.  Because Matos bears the burden of proof at trial, and has failed to adduce facts sufficient to establish the elements of his claims against the City,[20] see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), the Court will grant summary judgment in favor of the City of Camden.

_____

[19]The City of Camden has also filed a cross-claim against the defendant officers.  The cross-claim is for contribution and/or indemnification if the City were to be held liable for Matos's claims.  Because judgment will be entered in the City's favor, the Court will dismiss as moot the City's cross-claim.

[20]Liability under § 1983 may be imposed on municipalities where acts of the government employee are deemed to be the result of a policy or custom of the municipality for whom the employee works.  See Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691 (1978); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).

## **CONCLUSION**

Based on the foregoing, defendants Morgan and Sanchez are entitled to summary judgment on Linda Matos's loss of consortium claim in Count VII.  Morgan and Sanchez's motion is denied as to Matos's constitutional violation claims of excessive force, false arrest, and bystander liability in Counts I and III, as well as Matos's state law claims for assault and battery and false arrest in Counts V and VI.[21]  The City of Camden is entitled to summary judgment on plaintiffs' claim against it in Count IV.

An appropriate Order will be entered.


Dated: March 18, 2009                    s/ Noel L. Hillman

At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.

---

[21]Defendants did not specifically move to dismiss Matos's conspiracy claim in Count II.

26